IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| BFC GAS COMPANY L.C. AND<br>BFC ELECTRIC COMPANY L.C.,<br><br>Plaintiffs,<br><br>vs.<br><br>GYPSUM SUPPLY CO. d/b/a<br>GYPSUM SUPPLY CO. OF CEDAR RAPIDS,<br><br>Defendant. | No. C13-0081<br><br>ORDER REGARDING MOTION FOR SANCTIONS |

On the 27th day of May 2014, this matter came on for hearing on the Motion for Sanctions Including Dismissal (docket number 20) filed by the Defendant on April 28, 2014. The Defendant was represented by its attorney, Philip A. Burian. The Plaintiffs were represented by their attorney, Kathryn S. Barnhill.[1]

## I. RELEVANT FACTS AND PROCEEDINGS

On July 31, 2013, Plaintiffs BFC Gas Company L.C. and BFC Electric Company L.C. (collectively "BFC") filed a petition in the Iowa District Court for Linn County, seeking judgment against Defendant Gypsum Supply Co. d/b/a Gypsum Supply Co. of Cedar Rapids ("GSC") for damages sustained to BFC's facility during a storm on May 19, 2013. BFC asserts that its facility was damaged when parts of GSC's facility blew off and

---

[1] On May 30, 2014, the Iowa Supreme Court suspended Barnhill's license to practice law for a period of 60 days. *See Iowa Supreme Court Attorney Disciplinary Board v. Kathryn S. Barnhill*, No. 13-1966 (filed May 30, 2014).

struck BFC's adjacent property. BFC claims negligence and *res ipsa loquitur*. The action was removed to this court on August 15, 2013, and GSC filed an answer on August 22.

On November 14, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to a November 26, 2013 deadline for making initial disclosures under FED. R. CIV. P. 26, and a July 3, 2014 deadline for completion of discovery, with all dispositive motions due not later than August 1, 2014. In reliance on the pretrial deadlines, a bench trial has been scheduled before Chief Judge Linda R. Reade on December 15, 2014.

### A. First Motion to Compel

On September 16, 2013, GSC served BFC with its first set of requests for production of documents and its first set of interrogatories.[2] BFC did not timely respond to GSC's discovery requests. In an email to BFC's attorney (Kathryn Barnhill) on December 4, GSC's attorney (Philip Burian) advised Barnhill that she should consider December 17 "as a firm deadline for responding to the previously served interrogatories and requests for production of documents."[3]

In his December 4 email, Burian also noted that he had not received BFC's initial disclosures — the deadline was November 26 — and inquired as to when they could be expected. Burian told Barnhill that he needed to have BFC's initial disclosures in hand by

---

[2] There is some confusion regarding when the discovery requests were served. In a declaration signed by Philip Burian in support of GSC's first motion to compel, he states that the initial discovery requests were served on September 16. The proof of service found on the two documents indicates, however, that they were served on August 16. *Compare* docket numbers 10-1, 10-2, and 10-3. In an email to Barnhill dated September 16, Burian refers to "attached discovery, which is going out in the mail today." *See* docket number 10-4.

[3] Email from Philip Burian to Kathryn Barnhill, dated December 4, 2013 (docket number 10-14).

2

December 10 "as I need to protect the record with a motion if not." Barnhill assured Burian in her response that she would have the initial disclosures to him by the 10th. Early in the afternoon of December 10, another GSC attorney (Jeffrey K. Rosencrants) called Barnhill "as a final courtesy to avoid a Motion to Compel on the Initial Disclosures." Barnhill told Rosencrants that "she had just started working on them."[4]

At 1:03 p.m. on December 10, Rosencrants sent an email to Barnhill, concluding that "[b]ased upon the materials we sent (which were significant), and the status of your initial disclosures, it is rather clear that we will not receive a satisfactory response today."[5] Barnhill responded 10 minutes later, stating "My initial disclosures are very simple. Yes, I just started them. You will have all there is to have. If that is not sufficient, you will need to file whatever you think is appropriate."[6] BFC's initial disclosures, which were served later that day, identified two persons likely to have discoverable information, together with three categories of documents (photographs of damage, estimates for repair, and "financials documenting loss of income, profit and lost opportunity costs").[7]

Later in the afternoon on December 10, Burian sent Barnhill an email questioning the adequacy of BFC's initial disclosures, and advising Barnhill that "[m]y patience is reasonably exhausted and I will not be granting any more formal or informal extensions."[8] Burian told Barnhill that if responses to GSC's discovery requests had not been received

---

[4] Barnhill also asked Rosencrants for a duplicate copy of GSC's initial disclosures.

[5] Email from Jeffrey Rosencrants to Kathryn Barnhill, dated December 10, 2013 (docket number 10-5).

[6] Email from Kathryn Barnhill to Jeffrey Rosencrants, dated December 10, 2013 (docket number 10-5).

[7] Corrected Plaintiffs' Initial Disclosure Statement (docket number 10-6).

[8] Email from Philip Burian to Kathryn Barnhill, dated December 10, 2013 (docket number 10-7).

by December 17, then he would file a motion to compel. Burian also asked that Barnhill respond to earlier inquiries regarding the extent of BFC's electronically stored information ("ESI").

Barnhill responded 15 minutes later, acknowledging that she "started the Initial Disclosure this afternoon because this is a simple case of property damage."[9] Barnhill also represented that "[u]pon checking yet again, there is no ESI. There simply is none."[10]

BFC responded to GSC's discovery requests on December 17. Barnhill transmitted 17 emails with various attachments, including a spreadsheet which appeared to itemize damages in the amount of $3,333,351.[11] On December 19, Burian sent Barnhill an email confirming receipt of the attachments and raising various objections. On December 20, Burian received a CD from Barnhill containing additional documents. Burian wrote to Barnhill again on December 23, complaining that the discovery was not complete.[12]

On January 3, 2014, GSC filed its first Motion to Compel (docket number 10). BFC did not file a response to the motion and, therefore, the motion was granted on January 24. Specifically, the Order provided:

> Not later than **January 30, 2014** Plaintiffs shall produce the documents specifically and by implication referenced in paragraph 13 of the instant motion, and shall serve a signed answer to Defendant's interrogatories. If Plaintiffs fail to fully

---

[9] Email from Kathryn Barnhill to Philip Burian, dated December 10, 2013 (docket number 10-7).

[10] *Id.*

[11] At the instant hearing, Barnhill represented to the Court that BFC's damages did not exceed $200,000.

[12] However, BFC produced 166 pages of insurance documents *three* times, for a time period *after* the loss in this case.

4

comply with this Order, then they may be subject to appropriate sanctions upon further application by Defendant.

Order Compelling Discovery (docket number 14).

## B. Second Motion to Compel

On February 27, 2014, GFC filed a Second Motion to Compel (docket number 15). GSC alleged that BFC had not complied with the Court's Order Compelling Discovery, that GSC learned of additional discovery rule violations by BFC that were not known at the time the first motion to compel was filed, and that BFC had not complied with additional discovery obligations since GSC's first motion to compel. Specifically, GSC complained that BFC had failed to disclose and produce ESI, had failed to identify and preserve discoverable documents (including but not limited to ESI), had failed to produce a qualified and prepared witness under FED. R. CIV. P. 30(b)(6), and had failed to provide those documents identified in the Court's Order Compelling Discovery. The motion was accompanied by a 15-page brief, a declaration by attorney Philip Burian, and numerous exhibits (identified as Exhibits N through DD).

On January 24, 2014 — two days after the Court granted GSC's first motion to compel — Barnhill advised Burian by email that "I am having trouble with obtaining information because the FBI and IRS executed a search and seizure warrant on BFC relating somehow to Darrell Smith and took the computers and left no copies."[13] According to the email, Assistant United States Attorney C.J. Williams promised that Barnhill would receive a "backup copy" of a disc containing the seized documents "next week." At the instant May 27 hearing, Barnhill could not say when the search warrant was executed, and advised the Court that she had "just received" discs from the U.S. Attorney's office, containing copies of the seized documents.

---

[13] Email from Kathryn Barnhill to Philip Burian, dated January 24, 2014 (docket number 15-5).

The discovery issues are simplified somewhat, however, by BFC withdrawing its claims for lost profits and consequential damages. Barnhill notified Burian on January 24 that BFC was withdrawing its claims for those kinds of damages, and GSC confirmed that fact by a subsequent request for admissions.[14] According to Burian's declaration filed in support of the second motion to compel, "I withdrew or narrowed requests for production relating exclusively to lost profit-type damages, but I continued to request documents that included communications to third parties relating to the storm itself, property values, property damage and liability for that damage."[15] According to Burian's declaration, Barnhill sent him a total of 28 emails on January 29, with approximately 69 attachments. However, a substantial number of the attachments were duplicates.

As noted earlier, Barnhill represented to Burian in an email on December 10, 2013, that she had checked "yet again" and BFC had no ESI. According to Barnhill, "[t]here simply is none. All communications were by phone." That wasn't true. At his deposition on February 13, 2014, Brian Wink (BFC's plant manager) admitted that BFC officials communicated by email and text message regarding storm damage.

GSC also complained that Wink, who had been designated by BFC as a RULE 30(b)(6) witness, was not knowledgeable regarding the subjects identified on the Amended & Substituted Notice of Deposition (docket number 15-12). At the time of hearing, Ms. Barnhill conceded that Wink was unable to provide testimony regarding all of the enumerated subjects.

---

[14] In an email to Barnhill dated January 31, 2014, Burian acknowledged that "[m]uch of the order [compelling discovery] is rendered moot by the withdraw of lost income damages and I can only guess on what else there is in light of what you have told me about US Attorney etc." See docket number 15-10.

[15] Declaration of Philip Burian (docket number 15-2), ¶ 4 at 2.

BFC did not file any response to GSC's second motion to compel. On March 18, 2014, the Court filed an Order granting GSC's second motion to compel. The Order stated:

> Not later than **March 28, 2014**, Plaintiffs shall produce the documents described in paragraph 1 of the prayer in the instant motion, and produce a Rule 30(b)(6) witness as described in paragraph 2 of the prayer. If Plaintiffs fail to comply with this Order, then they may be subject to appropriate sanctions upon further application by Defendant.

Order Granting Second Motion to Compel (docket number 18).

### C. Motion for Sanctions

On April 28, 2014, GSC filed the instant Motion for Sanctions Including Dismissal (docket number 10). Inexplicably, BFC failed to file any response to the motion. On May 16, the Court entered an Order setting the motion for hearing, and directing Plaintiffs to appear "*and show cause why this case should not be dismissed and monetary sanctions ordered against them.*" See Order Setting Hearing (docket number 21) (emphasis in original). The hearing was delayed by one hour when BFC's attorney called chambers on the morning of the hearing and indicated that she had forgotten about the hearing and would be appearing telephonically. When the Court insisted that she appear in person, counsel then traveled to Cedar Rapids for the hearing.

At the hearing, Burian claimed that BFC had still not provided the documents listed in paragraph 1(c) of its second motion to compel. Barnhill advised the Court that she had only recently received copies of the documents seized by the U.S. Attorneys office in a search conducted at BFC's property in the fall of 2013, and that she was having difficulty getting her clients to respond to the discovery requests. The Court is hopeful that production of the seized documents may resolve some of the many discovery disputes.

## II. DISCUSSION

If a party fails to obey an order to provide discovery, the court may enter an order for sanctions. FED. R. CIV. P. 37(b)(2). The court has the authority to impose a range of sanctions including, in an appropriate case, dismissing the action or proceeding in whole or in part. RULE 37(b)(2)(A)(v). Instead of or in addition to other sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." RULE 37(b)(2)(C).

"[T]he district court's discretion narrows as the severity of the sanction or remedy it elects increases." *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 898 (8th Cir. 2009). Because there is a strong policy favoring a trial on the merits, the sanction of dismissal is used sparingly.

> When a dismissal sanction rests upon purported violations of discovery orders, courts should ensure that the specific requirements of Federal Rule of Civil Procedure 37 are met. To justify a sanction of dismissal, Rule 37 requires: "(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party."

*Sentis Group*, 559 F.3d at 899 (citations omitted). *See also Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 940-41 (8th Cir. 2000). GSC acknowledges in its brief that "dismissal is an extreme sanction to be used sparingly."[16]

The record establishes that BFC has been dilatory in complying with its discovery obligations. BFC did not comply with the deadline for initial disclosures under FED. R. CIV. P. 26, and the subsequent production appears to have been submitted without much thought or effort. When BFC failed to respond to GSC's initial discovery requests,

---

[16] GSC's Brief (docket number 20-1) at 13.

8

it was necessary for GSC to make repeated requests for compliance. When BFC finally served its responses, they were incomplete and it was necessary for GSC to file a motion to compel discovery. BFC did not respond to the motion to compel, and the Court entered an Order Compelling Discovery.

Two days after the Court entered its order compelling discovery, BFC notified GSC for the first time that most of its records were seized by federal authorities some time earlier. BFC subsequently produced additional discovery documents and identified a RULE 30(b)(6) witness. The documents were incomplete, however, and the witness was not knowledgeable regarding all of the subjects identified in the notice of deposition. Accordingly, it was necessary for GSC to file a second motion to compel. Again, BFC did not file any response and the motion was granted.

The second motion to compel, and the Court's Order granting the motion, were explicit with respect to the discovery items which needed to be produced. BFC failed to comply with the Court's Order, however, and GSC then filed the instant motion for sanctions. True to form, BFC filed no response to the instant motion. GSC also complains that BFC failed to initiate any kind of litigation hold, failed to identify and preserve ESI, "has not explained the intentional destruction or alteration of at least one potentially critical document" (the plant log book for the days following the May 19, 2013 storm), and continues to pursue "known false and frivolous allegations."

While BFC's violations are numerous and repeated, the Court nonetheless declines to recommend dismissal of the action as a discovery sanction at this time. The Court is unable to determine on this record the extent of prejudice suffered by GSC as a result of BFC's discovery failures. However, the Court attempted to impress on BFC's attorney at the time of hearing that BFC must fully comply with GSC's discovery requests, or be subject to appropriate sanctions, including dismissal.

The Court finds that an award of attorney fees is appropriate in this case. BFC has failed to comply with its discovery obligations, and has failed to comply with two Court Orders compelling discovery. The failure was not "substantially justified" and there are no other circumstances which make an award of expenses "unjust."

Attached to GSC's second motion to compel is an itemization of GSC's attorney fees which it attributes to "unnecessary fees for discovery." *See* docket number 15-19. GSC claims attorney fees totaling $9,373 through the filing of its second motion to compel. Additional fees have been incurred regarding the motion for sanctions.

The Court directs the parties to meet and confer regarding the reasonable expenses, including attorney's fees, caused by BFC's failure to meet its discovery obligation and comply with the Court's Orders. If the parties are unable to reach an agreement in that regard, then GSC may file a supplemental application for expenses, including attorney's fees, with an itemization of the amount requested. BFC may then file a timely response to the application. If necessary, the Court will set the matter for further hearing.

### III. ORDER

IT IS THEREFORE ORDERED that the Motion for Sanctions (docket number 20) filed by the Defendant is **GRANTED in part** and **DENIED in part** as follows: The Court declines to order dismissal of Plaintiffs' complaint at this time. The Court finds, however, that GSC is entitled to reasonable expenses, including attorney's fees, caused by BFC's failure to comply with its discovery obligations and the Court's Orders. The amount awarded will be determined by the procedure described above.

DATED this 30th day of May, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA