# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

BFC GAS COMPANY, L.C. and BFC
ELECTRIC COMPANY, L.C.,

        Plaintiffs,

vs.

GYPSUM SUPPLY CO. d/b/a
GYPSUM SUPPLY CO. OF CEDAR
RAPIDS,

        Defendant.

No. 13-CV-81-LRR

**ORDER**

---

## *TABLE OF CONTENTS*

I.     **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **PROCEDURAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **SUBJECT MATTER JURISDICTION.** . . . . . . . . . . . . . . . . . . . . . **3**

IV.   **SUMMARY JUDGMENT STANDARD.** . . . . . . . . . . . . . . . . . . . . . **3**

V.    **PLAINTIFFS' EXPERTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

     A.   *Were Plaintiffs' Experts Timely Disclosed?.* . . . . . . . . . . . . . . . . . **4**
          *1.*   *Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
          *2.*   *Applicable law and application.* . . . . . . . . . . . . . . . . . . . **7**
     B.   *Were Plaintiffs' Violations Substantially Justified or Harmless?.* . . . **10**
          *1.*   *Substantial justification.* . . . . . . . . . . . . . . . . . . . . . . . **10**
          *2.*   *Harmlessness.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
     C.   *What Is the Appropriate Sanction?.* . . . . . . . . . . . . . . . . . . . . . **12**

VI.   **FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

     A.   *Defendant.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
     B.   *Plaintiffs.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
     C.   *Rental Relationship.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
     D.   *May 19, 2013 Storm.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
     E.   *Defendant's Storm Damage.* . . . . . . . . . . . . . . . . . . . . . . . . . **17**
     F.   *Plaintiffs' Storm Damage.* . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

**VII. ANALYSIS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

    **A.**     **Negligence Claim**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
    **B.**     **Res Ipsa Loquitur Claim**. . . . . . . . . . . . . . . . . . . . . . . . . . **21**

**VIII. CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

## I. INTRODUCTION

The matter before the court is Defendant Gypsum Supply Co.'s Motion for Summary Judgment ("Motion") (docket no. 32).

## II. PROCEDURAL BACKGROUND

On July 31, 2013, Plaintiffs BFC Gas Company, L.C. and BFC Electric Company, L.C. (collectively, "Plaintiffs") filed a two-count Petition ("Complaint") (docket no. 2) in the Iowa District Court for Linn County, Case No. LACV079097. In the Complaint, Plaintiffs allege that Defendant's negligence damaged its facility.[1] Specifically, Plaintiffs allege that Defendant's negligence caused parts of Defendant's facility to damage Plaintiffs' facility during a May 19, 2013 storm. On August 15, 2013, Defendant removed the action to this court on the basis of diversity jurisdiction. Notice of Removal (docket no. 1). On January 10, 2014, Defendant filed an Amended Answer (docket no. 13), denying Plaintiffs' allegations and asserting affirmative defenses. On July 29, 2014, Defendant filed the Motion. On August 19, 2014, Plaintiffs filed a Resistance (docket no. 35). On August 25, 2014, Defendant filed a Reply (docket no. 37). On September 11, 2014, Plaintiffs filed a Supplemental Resistance (docket no. 42).[2] On September 12, 2014, Defendant filed a Supplemental Reply (docket no. 43). Defendant requests oral argument,

---

[1] Plaintiffs alleges that Defendant was negligent based on traditional negligence principles (Count 1) and based on the doctrine of *res ipsa loquitor* (Count 2).

[2] The filing of a supplemental resistance is not contemplated by Local Rule 56 or Federal Rule of Civil Procedure 56. Moreover, to the extent that the Supplemental Resistance provides the expert opinion of Robert Karpiuk as to the cause of Plaintiffs' damages, the expert opinion is untimely, which will be discussed in detail below.

but the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over Plaintiffs' claims against Defendant pursuant to 28 U.S.C. § 1332(a). Plaintiffs are Iowa limited liability companies with their principal place of business in Cedar Rapids, Iowa, and therefore, both are Iowa citizens. Complaint ¶ 1. Defendant is an Illinois corporation with its principal place of business in Rockford, Illinois, and therefore, an Illinois citizen. Notice of Removal ¶ 4. The Complaint does not allege an amount in controversy, but based on statements in the Notice of Removal and the fact that Plaintiffs have not resisted the removal of this case to federal court, the court is satisfied that the amount in controversy exceeds $75,000. *See* Notice of Removal ¶ 4. Accordingly, there is complete diversity of the parties and the amount in controversy exceeds $75,000. Therefore, the court finds that it has diversity jurisdiction over both of Plaintiffs' claims. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). "[U]nsupported, self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th

Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). If there is a genuine dispute about a material fact, the court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

## V. PLAINTIFFS' EXPERTS

Before discussing the facts of this case, viewing the evidence in the light most favorable to Plaintiffs and affording them all reasonable inferences, the court addresses whether Plaintiffs' expert opinions were timely disclosed and, if not, what, if any, sanction should be imposed.

### A. Were Plaintiffs' Experts Timely Disclosed?

The following is a timeline with respect to the expert disclosures and other relevant matters:

| | |
|---|---|
| 11/26/13: | Initial disclosure deadline. Scheduling Order (docket no. 8). |
| 01/02/14: | Plaintiffs' expert Sybill Ferrier of Construction Materials Testing ("CMT") inspected Defendant's facility, but Plaintiffs did not disclose an expert opinion. Fifth Declaration of Philip Burian, Defendant's Appendix ("Defendant's App'x") (docket nos. 32-2 through 32-7) at 220. |

02/07/14:    Plaintiffs' expert witness disclosure deadline. *See* Scheduling Order (docket no. 8) at 1.

04/17/14:    Plaintiffs' counsel, Kathryn Barnhill, e-mailed Defendant and stated, "I intend to rely on a rebuttal expert—CMT isn't structural and I decided they won't work. So I'm waiting for your expert reports." Kathryn Barnhill E-mail, Defendant's App'x (docket no. 32-6) at 219.

04/18/14:    Defendant produced reports from three experts, Partha P. Sarkar, Ph.D, Craig T. Raczynski and Dan Hicks. *See* Fifth Declaration of Philip Burian, Defendant's App'x (docket no. 32-6) at 220.

04/18/14:    Defendant's expert witness disclosure deadline. *See* March 13, 2014 Order (docket no. 17).

04/24/14:    Plaintiffs' counsel filed "Plaintiffs' Designation of Rebuttal Expert Witness" (docket no. 19), which designated James E. Tometich, P.E., as a witness "expected to rebut testimony by . . . [D]efendant's expert witnesses as to the causation of the damage to the Plaintiffs'[] plant and cooling towers." *Id*. at 1. No expert report accompanied the filing.

04/30/14:    Plaintiff's expert Tometich allowed access to Defendant's property for inspection. Fifth Declaration of Philip Burian, Defendant's App'x (docket no. 32-6) at 220.

05/02/14:    Plaintiffs' rebuttal expert deadline. *See* Scheduling Order (docket no. 8) at 1.

05/30/14:    Barnhill's law license suspended for sixty days. *See Iowa Supreme Court Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 470 (Iowa 2014).

07/03/14:    Original discovery deadline. *See* Scheduling Order at 1.

07/09/14:    Plaintiffs moved to reopen discovery due to a new attorney, Mark A. Critelli, appearing in this matter for Plaintiffs. Motion to Continue (docket no. 29) at 1. Plaintiffs' stated reasons for the Motion to Continue were "to allow

|            | [Plaintiffs'] new counsel to acclimate himself with the file and issues and to accommodate . . . Defendant's discovery requests." *Id.* at 2. Critelli attempted to file a motion to reopen discovery on July 3, 2014, but he was advised that he first needed to be admitted to practice in the Northern District of Iowa. *Id.* at 1. The court extended the discovery deadline to July 22, 2014 and noted that "***[t]he deadline for filing dispositive motions (August 1, 2014) will not be extended. The parties are reminded that December 15, 2014 remains a firm trial date.***" July 9, 2014 Order (docket no. 31) at 2. |
|------------|----------------------------------------------------------------------------------------------------------------------|
| 07/17/14:  | Plaintiff's expert Tometich signed his expert report. Tometich Expert Opinion (docket no. 35-3) at 8. It appears that Tometich finished his expert report on June 4, 2014, *id.* at 1-2, but, nonetheless, it was not certified until July 17, 2014. |
| 07/22/14:  | Extended discovery deadline. *See* July 9, 2014 Order (docket no. 31) at 2. |
| 07/23/14:  | Defendant received Tometich's expert opinion under a cover memorandum by Critelli dated July 22, 2014. Fifth Declaration of Philip Burian, Defendant's App'x (docket no. 32-6) at 220. |
| 07/29/14:  | Defendant filed the Motion. |
| 08/01/14:  | Dispositive motions deadline. *See* July 9, 2014 Order (docket no. 31) at 2. |
| 08/19/14:  | Plaintiffs filed Resistance and disclosed, for the first time, an expert report from Ferrier of CMT. Ferrier Affidavit (docket no. 35-2). |
| 08/25/14:  | Defendant filed Reply. |
| 09/11/14:  | Plaintiffs disclosed Karpiuk's expert report. |

### 1. *Parties' arguments*

In the Motion, Defendant argues that Plaintiffs did not disclose either of their expert opinions by the February 7, 2014 deadline set out in the Scheduling Order. Moreover,

Defendant argues that any expert report offered after this deadline was not a rebuttal expert report but rather a case-in-chief expert report. Defendant claims that "[w]hen [Plaintiffs] disclosed no [expert] opinions, [Defendant] had to guess what [Plaintiffs'] theories were in selecting its own experts and producing their opinions, and [Defendant] developed its motion and trial strategy based on the fact that [Plaintiffs] disclosed no expert for its case-in-chief." Brief in Support of the Motion (docket no. 32-8) at 23. Defendant also argues that it "now has no opportunity to conduct follow up discovery on the opinion before the dispositive motion deadline." *Id.*

In the Resistance, Plaintiffs do not address Defendant's claim that Tometich's expert opinion should be excluded as untimely.

In the Reply, Defendant argues that Plaintiffs' disclosure of Ferrier's expert report, which was disclosed on August 19, 2014, is also untimely and, therefore, should also be excluded. In the Supplemental Reply, Defendant argues that Karpiuk's opinion should also be excluded as untimely. Plaintiffs have not addressed either of these arguments.

### 2. *Applicable law and application*

Federal Rule of Civil Procedure 26(a) "requires disclosure of each individual likely to have discoverable information, providing a copy of all relevant documents in the party's possession or control, and identifying any person who may be used to present expert testimony." *Crump v. Versa Prods., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005) (citing Fed. R. Civ. P. 26(a)). Rule 26(a)(2)(B) imposes specific disclosure obligations upon parties who intend to present expert testimony:

> Unless otherwise stipulated or ordered by the court, this disclosure [of an expert] must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . . The report must contain:
>
> (I) a complete statement of all opinions the witness will express and the basis and reasons for them;

<table>
<tr><td>(ii)</td><td>the facts or data considered by the witness in forming them;</td></tr>
<tr><td>(iii)</td><td>any exhibits that will be used to summarize or support them;</td></tr>
<tr><td>(iv)</td><td>the witness's qualifications, including a list of all publications authored in the previous 10 years;</td></tr>
<tr><td>(v)</td><td>a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and</td></tr>
<tr><td>(vi)</td><td>a statement of the compensation to be paid for the study and testimony in the case.</td></tr>
</table>

Fed. R. Civ. P. 26(a)(2)(B)(I)-(vi). The parties "must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). In this case, the parties agreed that the Plaintiffs' expert witness disclosure deadline should be February 7, 2014. Chief Magistrate Jon Stuart Scoles approved the deadline and adopted it. *See* Scheduling Order (docket no. 8) at 1. Plaintiffs never requested an extension of that deadline. Although Plaintiffs implicitly disclosed to Defendant that they intended to rely on Sybill Ferrier as its expert through his visit to Defendant's facility, they failed to provide their expert report by February 7, 2014, in violation of Rule 26 and the Scheduling Order. Plaintiffs thereby violated Local Rule 26, as well. *See* LR 26(b) ("Unless otherwise stipulated by the parties, the parties must, on or before the deadlines for disclosing expert witnesses established by the . . . scheduling order and discovery plan, disclose their expert witnesses in accordance with the requirements of Federal Rule of Civil Procedure 26(a)(2)(A) and (B).").

On April 17, 2014, Plaintiffs' counsel told Defendant that "I intend to rely on a rebuttal expert—CMT isn't structural and I decided they won't work. So I'm waiting for your expert reports." Kathryn Barnhill E-mail, Defendant's App'x at 219. A day later, Defendant timely disclosed its expert reports. On April 24, 2014, Plaintiffs indicated to Defendant that Tometich would serve as a rebuttal expert as to causation. Tometich inspected Defendant's facility on April 30, 2014, two days before Plaintiffs' rebuttal expert

deadline, but Plaintiffs did not disclose Tometich's expert report until July 23, 2014, which was 166 days after the initial expert witness deadline, 82 days after the rebuttal expert deadline, 1 day after the extended discovery deadline and 9 days before the dispositive motions deadline. Even assuming, *arguendo*, that Tometich is a proper rebuttal expert and not a case-in-chief expert disguised as a rebuttal expert, Plaintiffs violated Rule 26 and the Scheduling Order since they failed to disclose Tometich's expert report prior to the rebuttal expert deadline. *See, e.g., Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000) ("There is no question . . . that the expert's report was untimely. . . . [Plaintiff] named an expert on that date, but did not provide a report."); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998) ("Rule 26(a)(2) provides that an expert's report must accompany the disclosure."); *see also Boardman v. Nat'l Med. Enters.*, 106 F.3d 840, 843 (8th Cir. 1997) (holding that the district court did not abuse its discretion in refusing to allow the plaintiff's expert witness to testify at trial after plaintiff failed to timely disclose the facts and opinions to which the identified expert would testify).

On August 19, 2014, Plaintiffs attached to its Resistance the Ferrier expert report, which they previously conceded "won't work," and utilized Ferrier's findings throughout its "Statement of Material Facts in Dispute in Support of Their Resistance to Defendant's Motion for Summary Judgment" ("Plaintiffs' Statement of Material Facts") (docket no. 35-1). This report was disclosed 193 days after the initial expert witness deadline, 119 days after the rebuttal expert deadline, 28 day after the extended discovery deadline and 18 days after the dispositive motions deadline, which is a violation of the Scheduling Order, Rule 26 and Local Rule 26(b).

Finally, on September 11, 2014, Plaintiffs disclosed Karpiuk's expert report, which was disclosed 215 days after the initial expert witness deadline, 141 days after the rebuttal expert deadline, 50 days after the extended discovery deadline and 40 days after the

dispositive motions deadline, which, of course, also constitutes a violation of the Scheduling Order, Rule 26 and Local Rule 26(b).

### B. Were Plaintiffs' Violations Substantially Justified or Harmless?

Having determined that Plaintiffs violated the Scheduling Order, Rule 26 and Local Rule 26(b), the court must decide what sanction, if any, is appropriate. In pertinent part, Federal Rule of Civil Procedure 37 provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard [may impose other sanctions].

Fed. R. Civ. P. 37(c)(1); *see also* LR 16(j) (providing that evidence may be excluded as a sanction for a failure to disclose in a timely manner). So, the court must determine whether the failure to disclose was either substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also Firefighters' Inst.*, 220 F.3d at 902 ("Unless the failure to meet a deadline was either harmless or substantially justified, the court may sanction a party by excluding its evidence." (citing *Trost*, 162 F.3d at 1008-09)).

### 1. Substantial justification

Plaintiffs have failed to provide any justification whatsoever for failing to disclose their expert reports in a timely manner, despite being presented with an opportunity to do so in the Resistance. Plaintiffs "ha[ve] the burden of proof . . . to produce sufficient competent evidence to make out a prima facie case regardless of what evidence [Defendant] might assemble. Since failure to disclose in a timely manner is equivalent to failure to disclose . . . , [Plaintiffs] needed to produce competent evidence within deadlines set by the court or risk sanctions under Rules 16 and 37." *Trost*, 162 F.3d at 1008 (citation omitted). Plaintiffs did not produce the initial expert disclosure in a timely

fashion, merely relying on untimely "rebuttal" experts in support of their case-in-chief. The reports of Plaintiffs' experts do not reference let alone address the findings of Defendant's experts, except for relying on one of Defendant's expert's raw weather data, which makes them case-in-chief expert reports rather than rebuttal expert reports. *See United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005) ("The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party . . . ." (quoting *United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir. 1980) (internal quotation marks omitted)); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 ("[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief."). If Plaintiffs needed more time to disclose their initial expert reports, they should have requested leave with the court to do so; rather, they disregarded the Scheduling Order, as Barnhill's e-mail indicates, and attempted to use their rebuttal expert reports as case-in-chief expert reports, even after the deadline to disclose rebuttal expert reports had passed. Moreover, they have provided the court with no reason for failing to timely disclose their expert reports or why they flouted the court's Scheduling Order. Accordingly, Plaintiffs have failed to show that their failure to timely disclose their expert reports is "substantially justified." Fed. R. Civ. P. 37(c)(1).

## 2. *Harmlessness*

With regard to whether Plaintiffs' failure to timely disclose their expert reports was harmless, Defendant argues that it "had to guess what [Plaintiffs'] theories were in selecting its own experts and producing their opinions, and [Defendant] developed its motion and trial strategy based on the fact that [Plaintiffs] disclosed no expert for its case-in-chief." Brief in Support of the Motion at 23. Defendant also contends in the Motion that it "has no opportunity to conduct follow up discovery on the [Tometich] opinion before the dispositive motion deadline." *Id.* Defendant also argues that Ferrier's expert

report and Karpiuk's expert report should be stricken because they were not timely disclosed. Plaintiffs do not offer any argument regarding harmlessness.

The court finds that Plaintiffs' failure to timely disclose its expert reports was not harmless. *See* Fed. R. Civ. P. 37(c)(1). The Tometich expert report was not only disclosed after the expert deadline, it was disclosed after the discovery deadline and only nine days before the dispositive motions deadline. Given that the discovery deadline had passed and the court had stated numerous times that the dispositive motions deadline was final, Defendant had little opportunity to depose Tometich based on the findings in his report, select experts based on his findings or potentially file a *Daubert* motion in an attempt to strike his expert report. Defendant was certainly prejudiced by the late disclosure. The Ferrier and Karpiuk reports were both disclosed *after* the dispositive motions deadline, which prejudiced Defendant because it did not have an opportunity to respond to these reports, depose the experts or select experts based on their findings prior to filing the Motion, especially considering that only one motion for summary judgment is allowed by order of this court. *See* Trial Management Order (docket no. 9) at 8-9. Plaintiffs' failure to timely disclose their expert reports was not harmless. Having found that Plaintiffs' failure to disclose was neither substantially justified nor harmless, the court turns to consider what sanction is appropriate.

### C. What Is the Appropriate Sanction?

Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule goes on to state that

> [i]n addition to or instead of this sanction, the court, on motion
> and after giving an opportunity to be heard:

(A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B)    may inform the jury of the party's failure; and

(C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(B)(2)(A)(I)-(vi).

*Id.* Since Plaintiffs violated Rule 26(a), the question becomes: what is the appropriate sanction?

"Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation. Fed. R. Civ. P. 16(b), (c)(5)-(7), (f). The rules thus permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified." *Trost*, 162 F.3d at 1008; *see also Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) ("When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case."). "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692. "[T]he district court's discretion narrows as the severity of the sanction or remedy it elects increases." *Id.* "Exclusion of evidence is a harsh penalty, and should be used sparingly." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995).

After considering all the *Wegener* factors, the court finds that the appropriate remedy is exclusion of the reports of Plaintiffs' experts. Plaintiffs have not provided the court with any reason for failing to comply with the court's Scheduling Order. Plaintiffs' failure resulted in unfair surprise and prejudice to Defendant, because Plaintiffs did not disclose their expert reports soon enough for Defendant to adequately address any of the

experts' reports in the Motion or in a potential *Daubert* motion. If the court were to extend the summary judgment deadline so that Defendant could file a second summary judgment motion, given that trial is two months away, Defendant "would have insufficient time to prepare for both the summary judgment motion and trial." *Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 320 (N.D. Iowa 2005); *see also Trost*, 162 F.3d at 1009 (affirming the district court's exclusion of expert evidence when the expert evidence was not timely disclosed). Moreover, allowing the expert reports to come in would require the court to reopen discovery and extend the trial date—something this court is unwilling to do given the court's calendar. *See Trost*, 162 F.3d at 1009 (stating that a disruption of the court's calendar is a factor to consider when determining whether to reopen discovery). The fourth factor—the importance of the information—certainly weighs against excluding the evidence, because, as will be discussed below, exclusion of the expert reports has the effect of dismissing Plaintiffs' claims. However, given the record before the court, the court finds exclusion of the expert reports to be warranted. The court also notes Plaintiffs' repeated failure to follow the Federal Rules of Civil Procedure,[3] the court's orders,[4] and

---

[3] *See* May 30, 2014 Order (docket no. 24) at 8 ("[Plaintiffs] did not comply with the deadline for initial disclosures under [Federal Rule of Civil Procedure] 26, and the subsequent production appears to have been submitted without much thought or effort.").

[4] *Id.* at 9 ("The second motion to compel, and the [c]ourt's Order granting the motion, were explicit with respect to the discovery items which needed to be produced. [Plaintiffs] failed to comply with the [c]ourt's Order, however, and [Defendant] then filed the instant motion for sanctions. True to form, [Plaintiffs] filed no response to the instant motion."); *see also id.* at 10 (awarding attorney's fees to Defendant because "[Plaintiffs] ha[ve] failed to comply with [their] discovery obligations, and ha[ve] failed to comply with two [c]ourt Orders compelling discovery"). In addition, [Plaintiffs] failed to comply with the court's Scheduling Order by disclosing [their] expert reports after the deadline set forth in the Scheduling Order.

the Local Rules,[5] which supports the finding that Plaintiffs' failure to disclose was not substantially justified.

## VI. FACTUAL BACKGROUND

In the Resistance, aside from providing the summary judgment standard, Plaintiffs only argue that "[t]he present case is not susceptible of summary judgment because, indeed, there are material facts in dispute . . . [a]s demonstrated by the Statement of Disputed Material Facts in Support of the Resistance to the Motion for Summary Judgment." Resistance at 3. However, each and every statement in Plaintiffs' Statement of Material Facts, including the facts outlined in the Supplemental Resistance, is derived from either Ferrier's, Tometich's or Karpiuk's expert reports. Since these expert reports shall be stricken, Plaintiffs have provided the court with no facts upon which to rely. And, since Plaintiffs have not responded to Defendant's Statement of Material Facts (docket no. 32-1), the court accepts Defendant's Statement of Material Facts. *See* LR 56(b) ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact."); *see also Libel v. Adventure Lands of Am., Inc.*, 482 F. 2d 1028, 1033 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or defense."). Accordingly, the facts are these:

### A. Defendant

Defendant is an Illinois corporation that sells and distributes commercial volumes of drywall. In 2003, Defendant, through a holding company, purchased a lumber yard

---

[5] For example, Plaintiffs failed to comply with Local Rule 56(b)(1), because by not responding to many of Defendant's substantive and procedural arguments, they failed to "respond[] to each of the grounds asserted in the motion for summary judgment." LR 56(b)(1). Plaintiffs also failed to comply with Local Rule 56(b)(2) because they did not respond to Defendant's statement of material facts by admitting, denying or qualifying Defendant's statement of material facts. *See* LR 56(b)(2).

located at 55 43rd Avenue SW, Cedar Rapids, Iowa, to use as a storage and distribution point. The lumber yard was initially constructed in 1969, and additional buildings were added in 1978. The buildings complied with applicable codes at the time of construction. The lumber yard had eight warehouse buildings consisting of pole frames and metal siding when Defendant purchased it, and Defendant did not build any new buildings at the lumber yard.

Defendant had an ongoing practice of repairing building components that were deteriorated or were damaged during the course of operation when the damage presented a structural integrity concern. Defendant's insurers periodically inspected the facility for structural integrity and safety concerns, and Defendant made the appropriate corrections. Prior to May 19, 2013, Defendant did not have any weather-related damage at the facility or otherwise experience any parts of its buildings blowing off. Defendant is also not aware of any such damage prior to it acquiring the facility. There is no evidence that Defendant was deficient in its maintenance and repair practices at its Cedar Rapids facility.

### B.  Plaintiffs

Plaintiffs' facility is located at 4120 Booth Street SW, Cedar Rapids, Iowa, which is immediately adjacent to the north of Defendant's facility. Plaintiffs purchased the facility in March 1996, and they erected "used" buildings, which were moved from another site, on the facility in 1998. Plaintiffs' facility contains large profile commercial buildings, some of which are nearly fifty feet high. The buildings on Plaintiffs' facility, particularly the cooling towers, were susceptible to high winds. Occasionally, Plaintiffs used the facility to burn biomaterial waste to create electricity.

### C.  Rental Relationship

In 2007, Plaintiffs began renting several buildings—Buildings 3, 7 and 8—from Defendant to store fuel sources for Plaintiffs' operation. Defendant ended the relationship in 2011 due to Plaintiffs' history of poor payment, poor housekeeping of debris and

sanitation problems created by Plaintiffs' waste material. While renting from Defendant, Plaintiffs never complained about the structural integrity of the buildings.

### D. May 19, 2013 Storm

On the evening of May 19, 2013, a severe thunderstorm swept across eastern Iowa causing substantial damage throughout the area. At approximately 10:55 p.m., the storm escalated in Linn County, Iowa. Instruments at the Eastern Iowa Airport measured straight line winds out of the south at seventy miles per hour. Typically, high winds are out of the west. The direction and force of the measured wind gusts ultimately imposed wind speeds that exceeded the wind-load design of the buildings at issue.

The storm inflicted damage throughout Linn County. Alliant Energy reported that 48,000 customers lost electrical service. Within the two-mile radius of Defendant's facility, there were fifty-four insurance claims for property damage attributable to the storm. Among the many commercial buildings damaged were hangars at the Eastern Iowa Airport. The Cedar Rapids Gazette's ColorWeb facility, a commercial structure about 800 feet to the south of Defendant, suffered storm damage similar to some of Plaintiffs' damage. The pattern of storm damage created a line that tracked the unusual south to north direction that directly intersected Plaintiffs' and Defendant's properties. This line of damage is consistent with an even more severe form of storm wind called a microburst, which would have imposed even greater wind speeds in the immediate area than the wind speeds measured by instruments at the Eastern Iowa Airport.

### E. Defendant's Storm Damage

The storm severely damaged all three of Defendant's buildings previously leased by Plaintiffs, with the entirety of Buildings 7 and 8 suffering severe damage, and the north end of Building 3 suffering severe damage. The north ends of Buildings 1 and 2 also suffered severe damage. The east and west ends of Building 4 suffered severe damage, and Buildings 5 and 6 suffered minor damage.

## F. Plaintiffs' Storm Damage

The storm damaged multiple parts of many of Plaintiffs' buildings, especially components on roofs and parts of the buildings that faced south or southwest. The physical evidence shows that the only cause of damage to Defendant's and Plaintiffs' buildings was the wind interference effect on the structures. There is no evidence that debris from Defendant, airborne or otherwise, actually caused any significant damage to Plaintiffs' structures. Defendant's buildings shielded and protected Plaintiffs' cooling towers for a period of time during the peak gusts.

Plaintiffs main complaint involves damage to its cooling tower structure. This structure suffered damage in prior weather events, as is evidenced by places where the siding had blown off and been replaced (or not replaced) prior to May 19, 2013. The wind susceptibility created by the size and configuration of Plaintiffs' buildings was exacerbated by Plaintiffs' poor initial construction and subsequent poor maintenance practices.

## VII. ANALYSIS

### A. Negligence Claim

"An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate causes,[6] and damages.'" *Thompson*, 774 N.W.2d at 834 (Iowa 2009) (footnote added) (quoting *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004)) (internal quotation marks omitted). As a "general principle," "a lay person sitting as a trier of fact lacks the knowledge to render a competent judgment as to negligence and proximate cause in complex matters requiring professional expertise." *Eventide Lutheran Home for the Aged*

---

[6] The Iowa Supreme Court in *Thompson v. Kaczinski*, 774 N.W.2d 829 (Iowa 2009) adopted the Restatement (Third) of Torts "scope of liability" formulation to determine whether a defendant should be liable to a plaintiff. *Id.* at 839. Nevertheless, "[i]n a negligence cause of action, the plaintiff must prove causation." *Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014).

*v. Smithson Elec. & Gen. Constr., Inc.*, 445 N.W.2d 789, 791 (Iowa 1989). "In those instances an expert witness is required to testify as to the standard of care." *Karnes v. Keffer Overton Assocs., Inc.*, No. 00-0191, 2001 WL 1443512, at *2 (Iowa Ct. App. Nov. 16, 2001) (citing *Thompson v. Embassy Rehab. & Care Ctr.*, 604 N.W.2d 643, 646 (Iowa 2000)).

In *Karnes*, the plaintiff suffered injuries after a flight of stairs that he was standing on collapsed. Plaintiff sued an engineering firm for "negligent design, engineering and construction oversight of stairs" and claimed "that the district court's [granting of] summary judgment [to defendant] due to [plaintiff's] failure to name an expert . . . was in error because no expert testimony [was] necessary in this case." *Id.* at *1. On appeal, "[p]laintiff contend[ed] that the issue at trial would not have involved the mechanics of stairway engineering, but would instead have been one determining whose faultily-engineered plans were used in the obviously defective construction of the stairs." *Id.*

The Iowa Court of Appeals reasoned that, although the defendant engineering firm conceded that "the stairway as constructed was 'unsafe' and 'inadequate,'" the plaintiff failed to show "that the breach of care was in these defendants' own design, engineering, or construction oversight." *Id.* at *2. The Iowa Court of Appeals went on to state that "[i]t is possible that the defendants in this case did not anticipate, and could not have been expected to anticipate (or even notice), the construction workers' unusually deep notching work which may have weakened the stairway design and required as a consequence that joist hangers be used to reinforce the stairs." *Id.* Accordingly, the Iowa Court of Appeals held that an expert is required to determine "whether, when drafting designs and specifications, a prudent architect or engineer should anticipate the kind of notching that occurred in this case." *Id.*

As in *Karnes*, in which the Iowa Court of Appeals required the plaintiff to have an expert to establish the engineering firm's duty of care, Plaintiffs must rely on an expert to

show that Defendant did not meet its duty of care in maintaining its buildings. Plaintiffs do not even argue that expert testimony is unnecessary. As Defendant states, whether it met its duty of care "involve[s] complex issues of large building design, aerodynamics, lateral wind loads [and] metal and wood failures," matters on which only an expert could opine. Brief in Support of the Motion at 20. Like in *Karnes*, where it was "possible that the defendants . . . did not anticipate, and could not have been expected to anticipate . . . the construction workers' unusually deep notching work," *Karnes*, 2001 WL 1443512, at *2, it was possible that Defendant could not have anticipated the type of winds that went through Linn County on May 19, 2013. Whether these winds should have been anticipated, and whether Defendant breached its duty of care in allegedly failing to maintain its buildings to withstand these winds, requires expert testimony.

Moreover, whether Defendant's alleged failure to exercise due care in maintaining its buildings was the cause of Plaintiffs' damage also requires an expert opinion to prove. *See Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990) ("Questions of causation which are beyond the understanding of a layperson require expert testimony. . . . The test for determining when an expert should be used is whether the untrained layperson 'would be qualified to determine intelligently . . . the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" (second alteration in original) (citations omitted) (quoting *M-Z Enters. v. Hawkeye-Security Ins. Co.*, 318 N.W.2d 408, 414 (Iowa 1982)) (internal quotation marks omitted)). Without an expert to explain if and how parts of Defendant's buildings collided with Plaintiffs' buildings, no fact finder could conclude either that Plaintiffs' damage resulted from the storm itself or that it resulted from parts of Defendant's buildings colliding with Plaintiffs' buildings. Accordingly, since Plaintiffs are unable to prove whether Defendant breached a duty or whether Defendant's alleged breach of such duty

caused damages to Plaintiffs, the court shall grant Defendant's Motion on Plaintiffs' negligence claim (Count 1).

### B. Res Ipsa Loquitur *Claim*

"*Res ipsa loquitur* is a rule of evidence which, when applied, permits, but does not compel, an inference that a defendant was negligent." *Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 166 (Iowa 1992) (emphasis added). "The happening of an injury permits an inference of negligence where plaintiff produces substantial evidence that (1) the injury is caused by an agency or instrumentality under the exclusive control and management of the defendant, and (2) the occurrence is such as in the ordinary course of things would not have happened if reasonable care had been used." *Id.* at 166-67. "This latter requirement may be proved by the common experience of laypersons or of experts. If expert testimony is required to establish the foundational facts and expert testimony is unavailable, then summary judgment is appropriate." *Id.* at 167.

Plaintiffs cannot prove either element of a *res ipsa loquitur* claim, because: (1) without an expert they cannot show that any of the damage on their buildings was caused by an instrumentality, that is, Defendant's building, under Defendant's exclusive control and management; and (2) even assuming, *arguendo*, that such damage was caused by Defendant's building, they cannot show without an expert that such damage would not have happened had Defendant exercised reasonable care. Accordingly, the court shall grant Defendant's Motion on Plaintiffs' *res ipsa loquitur* claim (Count 2).

### VIII. CONCLUSION

In light of the foregoing, the expert reports of BFC Gas Company, L.C. and BFC Electric Company, L.C. are **STRICKEN** and Defendant Gypsum Supply Co.'s Motion for Summary Judgment (docket no. 32) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Gypsum Supply Co. and against Plaintiffs BFC Gas Company, L.C. and BFC Electric Company, L.C. The case remains

open with respect to Defendant Gypsum Supply Co.'s "Second Motion for Sanctions" (docket no. 39).

**IT IS SO ORDERED.**

**DATED** this 15th day of October, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA